is 19-1004 Kennett v. Bayada Home Health Care. Please counsel. Please record opposing counsel. My name is Tom Collins, Buchanan, Ingersoll & Rooney here on behalf of Bayada Home Health Care Inc. As a housekeeping matter I'd initially note that there is a related appeal to this case. On January 24th, 2019, the matter of Jordan v. Maxim Healthcare Services was argued. I believe Judge Holmes was at that argument. We, from our position, we think that these two cases are directly aligned. They present the exact same issue on appeal. Both Bayada and Maxim are home health care providers in that regard. They both relied upon the Colorado exemption for companions set forth in the minimum wage order. I take it you're aware of the supplemental authority that was filed at the last minute yesterday? Yes, Your Honor. I received the supplemental authority via email last evening. I looked at it briefly today. I'll address that in my argument. My reaction to it is that it is not dissimilar from the supplemental authority that was filed previously. We view it as authority after certain changes were made to the companion exemption at the federal level by way of kind of, I guess, illustration. And at some point in 2013, proposed rules were issued by the United States Department of Labor which altered the companion exemption by removing the third-party employer language. Those position here is not that the rule has not changed over time. It certainly has changed over time. The federal rule now is that third-party employers cannot take advantage of the companion exemption. And it appears that that rule is now moving, the floor is shifting, so to speak, in the state of Colorado as well. But those are issues, those changes are occurring after the time period that's relevant here. So it's not, it's not, well, it's not, those changes do not have, in your view, legal import for the times that are material here. Is that correct? That's correct, Your Honor. The time period that's material here is July 2012 through November of 2015. At that point in time, minimum wage orders 30 and 31 were in place. Neither of those are implicated with any of the subsequent authority. And without delving into necessarily the contention all along, I take it, that during the relevant period, Colorado had attempted to align, as it relates to the companionship exemption, its law with federal law. That's absolutely correct. So it's not really surprising that they would do the contrary now, right? That's exactly the point, Your Honor. From our view, there is, if you look at the relevant time period, and I'll say that's up through January 2015, there's no contrary evidence coming out of the Colorado Division of Labor that the companion exemption under the Colorado minimum wage order is not intended at all times to comport with the federal companionship exemption. We presented to the district court in that regard a series of what I'll characterize best probably as extrinsic evidence in the nature of, first and foremost, it was an August 3rd, 2006 opinion letter that was issued. And I would point out in that regard that that opinion letter did not come from an appendix. It came from the director of the Division of Labor at the time. And in that opinion letter... Have you made that argument in either your opening or your reply brief? Oh yes, absolutely. That it was singularly important because it came from the director in 2006? It certainly was an exhibit to our, you know, it's in the appendix. I believe we have made that argument, Your Honor, that it's significant in the nature of who's issuing it. You're relying on it, and even apart from that, you're relying on it as an agency opinion, right? Exactly. Okay. But there's other evidence of, there's other extrinsic evidence of the division's opinion. In that companion case that was heard in January of this year involving Maxim, Maxim actually had two enforcement letters, and those were both before the district court and are in the appendix. Enforcement letters are different than opinion letters. Some of the attacks on the opinion letters relate to the fact that they're more opinions. They're the, you know, an employer in the division for an opinion. Those opinions are very clear. That opinion letter is very clear. But the enforcement actions are even, from our perspective, better because the enforcement actions involve the division of labor looking at an employee complaint. A specific employee is coming forth and saying, I'm entitled to overtime. I didn't get it. The division's looking at it and adjudicating it. Both of those enforcement letters that were issued to Maxim also came to the conclusion that the division construed the companion exemption in line with federal law. There's also an advisory bulletin that the division issued. That advisory bulletin promulgated by the division, also before the district court or argued to the district court, contains specific definitions of both companion and casual babysitter, which do not reference the household qualifier. So the thought is, why would the division in defining these two exemptions, companions and casual babysitters, not include the household qualifier? And now that argument, did you make that before the district court? I don't recall that specific argument. I recall you putting forward the definition, but the notion that there's somehow whether the definitions had greater force because they didn't include the household qualifier. I don't recall that. I believe, and Your Honor, I will not take issue if you say it's not there, but I believe that argument was, and keep in mind, we had filed both motions. We had competing motions for summary judgment. We had motions for reconsideration before the district court. I believe that that argument was, in fact, before the district court. But even to that point, let's assume it was, when you're defining those things, why would you necessarily put in a qualifier? I mean, you're defining what a companion is. You're defining what a casual babysitter is. Why would you necessarily put in a household qualifier? Because the household qualifier will tell you, once you have this definition, what do you do with it for purposes of the exemption? Those are two different questions, right? I don't think that they are. I mean, if you're going to place limitations, these are occupational exemptions. If you're going to place a limitation on an occupational exemption like companions, because with companions, there's a layer to it. The first layer is that a companion has to be providing care for someone who's not capable of caring for themselves, which, by the way, is the domestics in the first instance under the Fair Labor Standards Act, that there's a policy behind not requiring overtime compensation for individuals who are caring for individuals who are otherwise disabled and unable to care for themselves. So if you're going to put the requirements for the specific occupational exemption in a definition, why wouldn't you include the additional requirement that they have to be employed by the household member in the district court's decision? Is that, in the first instance, she concludes emphatically that there's only but one grammatical interpretation of this language. We had put forth a grammatically sound interpretation that supported our position. If one reads, and I understand... So it wasn't grotesque then? I do not believe it was grotesque. If one reads the language as it is and applies the last antecedent rule, which I understand has been rejected in Colorado as a presumption, but not rejected in Colorado as an interpretive aid, that if you look at the last antecedent rule and you just read it on its face, it clearly supports our reading of the position of the language. Absolutely. Okay, and I know your argument is that it was ambiguous, and so we should include the DOL opinion letter in the advisory bulletin, but there's no argument that if we... But even if we consider it ambiguous, don't we still have to consider and ultimately decide which is the better interpretation? You do, exactly. Okay, so your argument, as I understand it principally, is that the DOL opinion letter in 2006 and the 2012 advisory bulletin shed light on what the word companion means, but I really don't understand how we can include either one of those in our... Even if putting aside the 28J letter that was filed yesterday, because the notice specifically says, with regard to the opinion letters, to avoid potential confusion as to any of the above, all such letters, talking about opinion letters, are now rescinded. If the 2006 opinion letter was rescinded, does that mean that it's a nullity? I do not believe it does. I think that's ex post facto. I mean, the rule has been... Look at it in the context of the United States Department of Labor rule. The department has changed the rule effective January 1st, 2015. That does not mean that that was the rule looking back. Let's say we issue a panel opinion in your favor, and the Embark Court ultimately issues an order and says that we rescind the panel opinion, and this is now our opinion. Could parties subsequently continue to rely on our panel opinion as some sort of authoritative legal determination? We're getting... Now we're getting into, you know, what effect does a decision of a court have looking back? Is the court finding the law, or is the court creating the law moving forward? Well, I'm just trying to focus on what the word rescinded means. When an agency, and keep in mind here, with respect to the Colorado minimum wage order, the statute, it's not an agency interpreting a statute. It's the legislature saying, we're going to rely on the Colorado Division of Labor to set the standard based upon their expertise. The Colorado Division of Labor has set the standard and has told employers throughout the state what that standard is through the advisory, through the opinion letter that was issued by the Division of Labor interpreting its own rules, by the enforcement actions that it's taken, by the advisory bulletin. If the Colorado Division of Labor decides to change the rule, and I think that's what the 28J filings go to, they've decided to change the rule. That change has to be prospectively. You can't tell the employer that the rule is X up through this date. Oh, wait a minute, we're going to change the rule, and that change is going to go backwards. I don't think they can do that. And I don't... No, please go ahead. I was gonna say, I don't think you need to really get to the interpretive aids candidly. I think a plain reading of the... where the court should start is a plain reading. We have a court judge erred in applying the wrong standards. She looked to grammar only, and that's not the rule in Colorado, and we should be applying Colorado interpretive guidelines. That the rule in Colorado is, are there two reasonable interpretations? We respectfully submit that our reasons not only... or our reading is not only reasonable, but it's also correct. Once you get there, then the purpose of the court, or what the court should be trying to do, is to interpret it in a way that affects the intent of the division. All of the evidence from the division supports our position up and through 2015. And let me ask you a question on that, and this does touch a little bit on the rescinding issue. I mean, one could, as I understand you to say, yeah, you can rescind it, which means you can't rely on it in the future, but it doesn't affect past conduct. I mean, the other way you could argue that rescinding means it's a nullity, and you can't... the terms in some sense don't exist. But even under that view, the latter view, aren't we permitted to take notice of the fact that Colorado Division of Labor consistently has interpreted the companion exemption in line with federal law, and in fact its current filing would suggest it's doing exactly the same thing now. That's exactly right. And if we do that, then we, for the period of time in question, it was clear that federal law provided the companionship exemption applied to third-party employers, right? Correct. Okay. Correct. And I want to reserve a little bit of time, but I want to go to the plain reading of the language. If you look at the plain reading of the language, the district court judge got hung up on a superfluous and, and couldn't reconcile in her mind how our interpretation, hence the conclusion that our interpretation, was grotesque. I'd submit to the court, as you look to the language in that, you know, in the companion exemption, that if you're to accept, you know, the appellee's position and, and move forward with, you know, there's a superfluous and in here, you have to ignore, that basically makes the prior two nouns in that clause superfluous, specifically companions and casual babysitters, because they're both subsets of domestics. If, if they're all, if there's going to be one rule applied to all three of them, which would be entirely inconsistent with the FLSA rule, then why would you have to put and domestic employees employed in households, why wouldn't you just say domestic employees employed by households are, you know, subject to the exemption? It, it makes no sense. Our reading is consistent with the last antecedent rule. Their reading is consistent with the sixth exception to the last antecedent rule, and is consistent with the Division of Labor's interpretations. I'm not sure that I follow that argument. Your adversary's argument is that the first two nouns, if you put those, say, in an indented series, don't have a qualifier because, well, again, they're assuming the last antecedent rule. So I just, I just didn't literally follow which, what you said of why it wouldn't make sense, because it seems to me that, well, if you assume that the last antecedent rule applies with regard to the third noun, of course that would, the third noun and not the first and second. I don't think that's accurate. Apply, applying the last antecedent rule, and keep in mind there's no comma between the household qualifier. Okay. Applying the last antecedent rule, straightforward, as a canon of grammatical construction, our interpretation, our interpretation is correct. What I was trying to say is that if the district court hung on the idea that there was a superfluous and in that clause, if you take that, you know, that reading out that and, if you go back and accept their position, their argument applying the series canon qualifier requires that you ignore companion, really, and casual babysitter, because they're all domestics. Why would you, there'd be no need to insert those two things. I'm out of time. I wanted to reserve, but things go by fast. We'll see how it goes. Thanks. Good morning, and may it please the court. Matthew Helland of Nichols-Castor for the Plaintiff Appellee. I'd like to start with the two 20HA letters and then move on to the substance of my argument. First, with respect to the the word rescind, and what does that mean? I agree with you, Judge Bacharach, that rescind means that the letter has been wiped from existence. I don't mean to put words in your mouth that that's not exactly the way you phrased it, but our view is that those weren't really relied on at all anymore. So does that mean that everybody can go back then and come in and claim additional wages? Well, I think that during the period that it was not rescinded? I think that goes to a more important question on that first 20HA letter, and that is, why were the letters rescinded? And the letters were rescinded because of problems with the process, and the division was very upfront about identifying all of the problems with the process in the previous, under the previous regimes, and with the previous opinion letter. Well, what's the answer to my question? Yes, they could go back now, two years later, and say, well now I want all my back wages? The answer is that a court should not defer to those opinion letters because they were issued in private without public notice and comment, and to the extent they attempt to change or modify properly issued regulations, they're not entitled to deference. And so I think that's beyond the question of rescinding, the importance of that first of the divisions, withdrawal of those letters, is the acknowledgement that there were process problems with the letters in the first place, and that goes to the deference issue. Deference is a different question from whether we can consider them and whether we can view them as a persuasive interpretation, isn't that right? Deference... Thanks Skidmore. Correct, correct. Deference goes to whether the consideration the court should give to those letters, but underlying deference is whether the opinion is a reasonable interpretation of the actual regulation. And even if, even if we wipe those two documents out, and, and why could we not take notice of the fact that since 1978, I think 1998, I guess it is, 1998, the DOL has, has interpreted the companionship exemption to be consistent with federal law, and if we do that, that leads to one answer, which is that the companionship exemption, just like federal law up until the change that took place, covers third-party employers. The court can reach that conclusion, but in order to get there, the court has to look at the text of the regulation and determine whether the text of the regulation supports the department's, the division's interpretation of the regulation. But it's their own regulation, they wrote it, they can tell us what they meant, can't they? Um, I'd like to start with the text of the regulation and then get to why, um, I don't think an agency can tell you what a regulation meant. After the, after the regulation is passed. If the, if an agency takes a position... Well, who passes it? The agency. It's not a statutory or a legislative event. That's correct. And after an agency enacts a regulation, if it takes a position as to what that regulation means, that, that position has to have grounds within the actual regulation. And if it's contrary, if the agency's position is contrary to the regulation, then courts may not defer to it. If the agency changes its mind and decides that the regulation should be something different, the proper method for making that change is through notice and comment rulemaking, and that's what the agency is doing right now. The problem with the opinion letter is that as a basic matter of administrative procedure, an agency may not modify or change a properly enacted regulation through an opinion letter, especially through a private opinion letter. Now I'd like to, I'd like to talk about the opinion letter because there are some specifics about the opinion letter that are important. The idea of deferring to an agency opinion letter does rest on the idea that the agency is going to interpret of what the regulation actually says. And if you look at the opinion letter, there is no analysis and there is no interpretation of the regulation. And what if the agency had one line that said, when we interpret, when we wrote this rule, we intended to comply with and adhere to the federal interpretation of the companionship exemption, period. Then if we went to the companionship exemption in federal law for that period of time, what would it tell us? That third-party employers are covered. Why would that not be enough? If the agency did that in an opinion letter that did not go through notice and comment rulemaking, then that opinion letter would not be effective if the actual text of the regulation doesn't support that conclusion. That's a separate thing. Notice and comment rulemaking is separate from the question of whether we could view this as a reasoned analysis and if the agency had told us what they were doing, when they wrote it, and this is what our what we're trying to do, look there. And that's exactly what we do when we get the answer we get. Okay, I respectfully disagree, Your Honor, because I think it's a difference between a belief about what the division intended to do and the reality of what the division actually did. The opinion letter talks about the division's belief. It says, it is the belief of the division that when we enacted this regulation, we meant to make it consistent with federal law. A belief about the division's intent is not the same as an interpretation of the text of the regulation. Well, you would have to give us something, it seems to me, in the text that categorically tells us that that belief is contradicted by the language. And the court, yes, the district court called it grotesque, but I'd like to see why that is grotesque. And it doesn't seem to me facially that that necessarily is true. There are several very important differences between the federal regulation that was in effect at the time. The first important difference is that the federal regulations have an express exemption for third-party employers, such as BIATA. The state regulation does not have an express exemption for third-party employers. Instead, the state regulation talks about workers employed by the household or the family. In other words, the perspective is completely opposite, and the state regulation looks at it a different way, makes a specific exemption for workers employed by the household or the family, and makes no mention of the third-party providers. And there's a whole set of federal regulations about third-party providers. So that's the first difference. The second difference is with respect to domestic workers. The federal regulation distinguished between live-in domestic workers and other domestic workers. And under the federal regulation, live-in domestic workers, who are employed by third-party employers like BIATA, were exempt. Under the state regulation, under both parties' reading of the regulation, those same domestic workers would be non-exempt. Because there's no question that the household qualifier at least applies to domestic workers. And the third part of the state regulation at issue here says domestic workers employed by the family and the household are exempt. And that is the limit of that exemption. One doesn't have to say that they track in all respects to say they track as it relates to one aspect of the regulation. I mean, the question is, have they tracked consistently since 1998 as it relates to the companionship exemption? That's what we're here about. That's what this case is about. And our response to that, Your Honor, is that we're talking that the only thing in the regulation about companions is that companions are exempt. There's an exemption for companions. There is nothing further than that to determine whether the Division of Labor tracked the federal regulations. Except that it didn't include an express exemption for third-party employers like the federal regulation did. So then we move on to the accompanying words around the rest of the word companion and look at the phrase that we're looking at. And there's a clear intent to differentiate as to domestic workers. They're treated differently. And our point simply is that there is no, there can be, we're looking at How does that help you? I mean, the fact that in the federal wage regulation, they're treated differently. Yeah, they're treated differently because the household exemption only applies to them. I mean, you know, this notion that it is a grotesque reading strikes me as odd since the and, this so-called superfluous and, could just be a way that they were underscoring that this is a difference. This is the break. There's casual babysitters, there's companions, and there are domestic workers who are subject to the household qualifier. That seems like a natural reading to me. There doesn't seem to be anything grotesque about that. The point is this, Your Honor, and I'll try to make it one more time. The only basis for the presumption that the state regulation is meant to track the federal regulation is a statement in a 2006 opinion letter that the director of the division believed that that's what the division intended when it enacted the regulation. You were focusing on the text of this, of that regulation. I was trying to comply. And if we focus on the text of the regulation, if we are going to find that that 2006 opinion letter in some sense was unreasoned, or didn't have, or should not be deferred to, then presumably would come because it is in conflict with the text, right? Correct, Your Honor. Okay. And one way you get that conflict is you say the text is grotesque. And therefore, the reading of the text that is being posited is grotesque. And it just can't be that. And therefore, there's a conflict there between what the agency believed it was doing and what it actually wrote. The point I'm making is I don't see the grotesqueness of that reading of that language. That language actually, if I were to read it not knowing anything about this case, that's exactly what I would read it to mean. That that and was designed to underscore that there is a break between casual babysitter, between companion, and between domestic employee. The last language only applying to the last. I understand your position, Your Honor. And we read it differently. The district court did as well. And if it's okay, I'd like to move on to a couple other areas of the argument. The next piece I'd like to address is the 28-J letter that we filed last night. And a quick point on that. We are not taking the position that the new regulation should reply retroactively. What's important about the 28-J filing are the statements that the division made in conjunction with its notice of proposed rulemaking. And in two of those documents that it issued, Exhibits C and D, the division clearly said that the current version of the companion exemption, the one that's been in place since 1998, is narrow and it only applies to employees employed by the household and the family member, by household or family members. It does not apply to third-party providers. And the division actually expressed policy problems with the narrow scope of the exemption. And so now what we have in front of us is a regulatory record that actually provides a great contrast between backroom private opinion letters that attempt to change or modify the law and proper notice and comment rulemaking that's issued to the public, that invites the public to participate, that explains the agency's reasoning, that includes research, includes a notice and comment period, and that will come forward with additional regulations. And what would be the import of that related to all of those people who I mean, you, I think in your first 20-way J letter, you cited Kaiser or K-I-S-O-R, however you pronounce that. And in that case, the court talked about the notion of unfair surprise. Now, what sort of unfair surprise would come to all of these people to now all of a sudden learn that, oh, no, no, no, it never meant that. It never, you know, even though for since 1998, we were saying we were tracking with the Department of Labor at Federal. No, we never meant that. The unfair surprise is part of the problem with the opinion letters. They were not public. We didn't learn about the opinion letters until we filed this case. I'm talking about this document. What, what, why isn't this analysis in your second 20-way J letter, why isn't, wouldn't that be unfair surprise to everyone that that's not what you meant, what they meant? And, and my answer is that the opinion letters were not published to everyone. They were only sent to the requesting party. They were never a part of the public record. And, and the only reason that they, that they become available is if they arise in litigation or if someone submits a FOIA request. And so my answer is there is no public, there is no undue surprise except to those parties who have taken it upon themselves to get a private ruling from the agency without public participation. So the use that we should make of those second 21-J letter relates to the explanation that the agency is giving of what it intended at the time. Correct. Okay. And I would like to close with a bit about statutory interpretation. We don't dispute that both intrinsic and extrinsic aides are proper aides to statutory construction. I want to clear up one dispute that, that permeated through the briefing and that's this question about the last antecedent rule and whether courts apply it. And we submit that the case's identifying the last antecedent rule, deciding not to apply the last antecedent rule, and then reaching a conclusion through other means. And the primary example of this is the Weeks case. In Weeks, the court says we are not going to apply the last antecedent rule. We're going to look at legislative history. Now it goes through the legislative history and reaches the same result that it would have reached if it applied the last antecedent rule. But the important distinction the court draws is it was getting there through the legislative history, not through the last antecedent rule. And, and why is that important? It's important because here we don't have legislative history and we don't have regulatory history to draw back on. The 2006 opinion letter and the 2012 bulletin are statements that are issued after the fact. Going forward with the new regulations, there will be a regulatory history that the court can take a look at. And that's the notice and comment record that the division just distributed. And I see my time is up. Thank you, counsel. Case is submitted.